THE STATE OF OHIO, APPELLEE, *v.* WILLIAMS, APPELLANT.

(No. 1801—Decided September 16, 1969.)

*Mr. David M. Griffith,* prosecuting attorney, for appellee.

*Mr. Eugene B. Fox,* for appellant.

LYNCH, P. J. This appeal is on questions of law by defendant, appellant herein, from his conviction by a jury for armed robbery and from his sentence of from ten to twenty-five years to the Ohio Penitentiary.

On January 27, 1967, about 1:30 p. m., a young man with a gun robbed Mrs. Bertie Wagner, wife of the manager of the Lawson Dairy Store in Hubbard, Ohio, of $401 in cash, four cartons of king-size Kool cigarettes and two cartons of Marlboro cigarettes.

Chief Greer of the Hubbard police department learned that an automobile was parked near the Lawson store before the robbery, bearing Pennsylvania license plates No. 1A9114 and with one or two suspicious looking men sitting in it. Chief Greer then ascertained, through the Pennsylvania State Police, that this license number was registered to Edward Mattis, 114 West Eighth St., Homestead, Pennsylvania.

Chief Greer then called Chief James Armstrong of the Homestead, Pennsylvania, police department and informed him as to the robbery and the presence of Edward Mattis' automobile near the scene of the crime.

Chief Armstrong was aware that defendant usually drove this car, which belonged to his uncle, Edward Mattis. Therefore, he obtained a warrant and ordered two patrolmen to arrest defendant.

Defendant resided with his grandmother and his uncle, Edward Mattis. The patrolmen arrested him at his home and observed a partially opened carton of Kool cigarettes at the Mattis residence. After defendant was brought to the Homestead police station, a search warrant was obtained and the two patrolmen returned and seized the carton of Kool cigarettes.

Defendant filed a motion to suppress as evidence the carton of Kool cigarettes. This motion was heard by the trial court on May 19, 1967, and on June 16, 1967, and the motion was overruled. It was admitted into evidence at the trial of the case as state's exhibit No. 1.

Defendant's fifth, sixth and seventh assignments of error contend that the defendant was denied a fair trial and due process of law because of the trial court's failure to exercise due regard for defendant's constitutional right to be represented by counsel by appointing inexperienced counsel.

Defendant contends that the counsel which the trial court appointed to represent him had been admitted to practice less than three months before this crime was committed, and that this representation of the defendant constituted counsel's first jury trial. However, there is nothing in the record to substantiate this.

As a matter of policy, we feel that a trial court should avoid appointing inexperienced attorneys to represent defendants indicted for serious offenses such as armed robbery. We recognize that the trial court at times is limited in its choice of appointment by the number of attorneys available for such an appointment. This ordinarily should not be a problem in as populous a county as Trumbull County. However, there is nothing in the record to indicate the circumstances under which the trial court appointed counsel for defendant for his trial, and there is a presumption in favor of the validity of the decision of the trial court. 3 Ohio Jurisprudence 2d 666, Appellate Review, Section 715.

There is also a presumption that a court-appointed counsel for an indigent defendant is competent and acts properly. The adequacy of court-appointed counsel for an indigent defendant may not be measured merely by the results obtained. The fact of conviction does not militate against the presumption of competency which attends every such appointment. *Kilgore* v. *United States,* 323 F. 2d 369, certiorari denied, 376 U. S. 922; 24A Corpus Juris Secundum 631, Criminal Law, Section 1850.

Defendant points out that the appointment of his trial counsel was on September 20, 1967, which was the first day of defendant's trial. However, the record reveals that defendant's trial counsel filed a motion to suppress evidence on behalf of defendant on May 10, 1967, and actively represented defendant at two separate hearings on this motion on May 19, 1967, and June 16, 1967. We therefore hold that defendant's trial counsel was actively representing defendant a reasonably sufficient time before the trial of the case to adequately prepare for the trial.

Defendant states that his trial defense counsel failed to pursue the fact that the affidavit for a search warrant totally failed to set forth facts to show probable cause. The difference between Pennsylvania and Ohio law on affidavits for search warrants is discussed under assignments of error Nos. three and four. The record reveals that defendant's defense counsel did ascertain the facts which were the basis of the affidavit for the search war-

rant. When defendant's defense counsel attempted to pursue this line of questioning, the trial court sustained the objection of the prosecuting attorney on the basis that the validtiy of the search warrant could only be questioned on a motion to quash the search warrant rather than on a motion to suppress the evidence. In our opinion, the trial court did not have jurisdiction to quash the search warrant issued by a Pennsylvania justice of the peace. Therefore, we conclude that defendant's defense counsel protected his legal rights on this issue.

Defendant's counsel on appeal is an experienced and capable attorney in the field of criminal law, and to support the contention that defendant was denied effective representation by his court-appointed counsel, he criticized the performance of defendant's trial counsel at about every stage of the trial. However, most of the criticism was general, such as: "There was almost total indifference shown in the questioning of the jury panel"; "the cross-examination of prosecution witnesses consisted substantially of leading them through a repeat performance of their testimony on direct examination"; and "the prosecution was allowed to present an incredible amount of hearsay evidence, inferences and prejudicial conclusions, without any foundation whatever." However, counsel did cite one specific example, which was that at the trial defense counsel brought out, in cross-examination, that the victim, Mrs. Wagner, had identified the defendant in a line-up only a few days after the robbery. We agree with defendant that ordinarily defense counsel should not do this. However, in this case, defense counsel was confronted with the fact that Mrs. Wagner, the first witness, positively identified Williams as the person who robbed her, and he had the problem of what to do about this evidence. He brought up the fact of Mrs. Wagner's identifying defendant in a line-up a few days after the robbery apparently for the purpose of establishing to the jury that Mrs. Wagner had seen defendant at the line-up. We feel that under the circumstances this was a matter of judgment upon which even experienced criminal lawyers could disagree.

Defendant is critical of the fact that the entire trial lasted less than one day. We have no doubt that if defendant's present counsel had represented him at the trial, the trial would have lasted longer. However, we do not think that expanding the length of the time of the trial would change the result.

Defendant has offered nothing specific to establish how his counsel could effectively overcome the evidence presented against him at the trial. There is not even a suggestion that there was available evidence that would have been used to overcome the positive identification of defendant by Mrs. Wagner as the person who robbed her. With all the experience and skill that defendant's present attorney has in criminal law, he still has not pointed out specifically what additional questions could have been asked of the jury panel or the state's witnesses to make the defense of defendant more effective.

In *United States, ex rel. Weber, v. Ragen*, 176 F. 2d 579, 586, the court stated as follows:

"As to the requirement under the Fourteenth Amendment, the services of counsel meet the requirements of the due process clause when he is a member in good standing at the bar, gives his client his complete loyalty, serves him in good faith to the best of his ability, and his service is of such character as to preserve the essential integrity of the proceedings as a trial in a court of justice. He is not required to be infallible. We know that some good lawyer gets beat in every law suit. He made some mistakes. The printed opinions that line the walls in our offices bear mute testimony to that fact. His client is entitled to a fair trial, not a perfect one."

An examination of the entire record in this case indicates that the defendant's trial defense counsel spent a great deal of time and effort in preparing for defendant's trial, and, on the whole, rendered a creditable performance. He might have made some mistakes of judgment on questions of the type which trial counsel must continually make under the pressure of the trial and in the light of their best judgment at the time. The fact that, after the event

and in the light of all that has subsequently transpired, other counsel now regard as wrong the decisions made by defendant's trial counsel cannot be made the basis for a claim of incompetency of such trial counsel.

After careful consideration of the entire record and the complaints of incompetency against defendant's trial counsel set out in his brief, we conclude that the record does not disclose anything which defendant's court-appointed counsel did or did not do which possibly could have been prejudicial to the rights of defendant. We therefore find defendant's fifth, sixth and seventh assignments of error to be without merit.

Defendant's first assignment of error is that the trial court erred in allowing part of the trial to proceed during the involuntary absence of the defendant.

At the second hearing on the motion to suppress evidence, which was held on June 16, 1967, the trial judge asked attorney Burkey, defendant's trial counsel, if his client was present, and the following occurred, as disclosed by the record of the hearing:

"By Mr. Burkey: No, I didn't feel it necessary to call him at this time.

"By the Court: He waives personal appearance at this trial, is that correct? At this hearing on the motion to suppress?

"By Mr. Burkey: Yes."

At this hearing, testimony was given by police officers of the Homestead, Pennsylvania, police department as to the arrest of defendant and the seizure of a partially opened carton of Kool cigarettes at defendant's residence after a search warrant was issued.

The prosecution contends that a hearing upon a motion to suppress is not a part of the trial which requires the presence of defendant.

Section 2311.01, Revised Code, provides:

"A trial is a judicial examination of the issues, whether of law or of fact, in an action or proceeding."

An accused charged with a felony is entitled to be present at every stage of the trial. *Jones* v. *State,* 26 Ohio St.

208, 15 Ohio Jurisprudence 2d 303, Criminal Law, Section 70.

However, the physical presence of the defendant is not required when purely procedural questions are presented. *State* v. *Bond,* 30 Ohio Law Abs. 592.

The test to be applied in determining whether the right of defendant to be present at all stages of his trial is whether the interest of defendant has been affected by defendant's absence. *State* v. *Viola,* 51 Ohio Law Abs. 577. In order for a defendant's interest to be affected there must be a reasonably substantial relationship to his opportunity to defend. *Stein* v. *United States,* 313 F. 2d 518.

No Ohio case directly in point with the instant case has been called to our attention. However, we have found cases from other jurisdictions pertinent to the issue involved.

It has frequently been held that a defendant's right to be present at his trial depends upon whether the proceedings involve questions of law only or proceedings in which testimony of witnesses is received. Courts generally hold that defendant's presence is required when testimony of witnesses is received, but under certain circumstances when matters of law are being argued before the court, such as preliminary pre-trial motions which do not affect substantial rights of the defendant, defendant's presence is not required. 21 American Jurisprudence 2d 318, Criminal Law, Section 289; 23 Corpus Juris Secundum 891, 897, Criminal Law, Section 974.

The case of *People* v. *Anderson,* 16 N. Y. 2d 282, 213 N. E. 2d 445, is directly in point with the instant case. There it was held that the holding of a hearing on a motion to suppress evidence, in which testimony of a witness was received during defendant's unexplained absence from the courtroom, deprived him of due process of law in denying him an opportunity to be present.

We conclude that a hearing on a motion to suppress evidence, at which testimony of a witness is received, whether held before or during the trial of a case, is such a part of a trial as to require the presence of the accused.

The next question is whether, in the instant case, counsel for defendant may waive defendant's right to be present at the hearing on the motion to suppress evidence.

The cases that have been decided in Ohio concerned situations where a jury was present, and the trial on the merits was in progress. In such situations, the right of one accused of crime to a public trial and to be present can not be waived by his counsel. *Jones* v. *State, supra*; *State* v. *Grisafulli*, 135 Ohio St. 87; *State* v. *Delzoppo*, 86 Ohio App. 381, motion for leave to appeal overruled, January 18, 1950; 15 Ohio Jurisprudence 2d 309, Criminal Law, Section 79.

No Ohio case on the issue of whether counsel for defendant may waive his right to be present at the hearing on a motion to suppress evidence has come to our attention. Our research has revealed only one case directly in point on this issue, namely, *People* v. *Brighenti*, 22 App. Div. 2d 956, affirmed, 16 N. Y. 2d 753, 209 N. E. 2d 733, which held that although defendant was entitled to be present at a hearing on his motion to suppress evidence, his attorney's failure to arrange to have him produced at hearing constituted effective waiver of his right to be present and unequivocal election to proceed through attorneys alone. See, also, *People* v. *Colombani*, 22 App. Div. 2d 956, affirmed, 16 N. Y. 2d 1055, 213 N. E. 2d 460.

In the instant case, both patrolmen Shields and Pachuta, who testified at the June 16, 1967, hearing on the motion to suppress, also testified substantially the same at the trial of the case in the presence of defendant, so that defendant had the opportunity at the trial to assist his attorney to defend against the introduction of the challenged evidence, which, under assignments of error Nos. three and four, we hold was properly admitted into evidence in the case.

Under those circumstances, we feel that no substantial rights of the defendant were adversely affected, and that if any error was committed, it was harmless error. *State* v. *Vaughn*, 19 Ohio App. 2d 76 (July 21, 1969, issue of Ohio Bar); Section 2945.83 (E), Revised Code.

We hold that under the circumstances of this case, defendant's attorney could waive defendant's right to be present. We, therefore, overrule defendant's first assignment of error.

Defendant's second assignment of error is that his arrest was illegal; that, therefore, any evidence obtained as the result of such illegal arrest is inadmissable under the "fruit of the poisonous tree doctrine," citing *United States* v. *Paroutian*, 299 F. 2d 486, and *Wong Sun* v. *United States*, 371 U. S. 471.

Captain Black and patrolmen Shields and Pachuta of the Homestead, Pennsylvania, police department, all testified that defendant was arrested pursuant to a warrant for his arrest made out by Chief Armstrong on information received by Chief Greer of the Hubbard, Ohio, police department. The warrant was not introduced as an exhibit in this case, although patrolman Shields had it in his possession at the June 16, 1967, hearing and showed it to defendant's trial counsel, who took no exception to its validity.

We do not agree with defendant's contention that because Captain Black testified that Chief Armstrong "made out the warrant for the arrest of Ronald Williams" this means that Chief Armstrong actually issued the warrant for the arrest of defendant, in violation of the provisions of the Pennsylvania Criminal Code.

As a general rule, it is presumed that a public official properly and regularly discharges his duties, or performs acts required by law, in accordance with the law and the authority conferred upon him, and that he will not do any act contrary to his official duty. The presumption of regularity applies to police and the validity of warrants. 31A Corpus Juris Secundum 318-325, 343, 361, Evidence, Section 146.

We hold that there is a presumption in favor of the regularity of the warrant issued for the arrest of defendant. We hold further that there is insufficient evidence in the record of this case to overcome this presumption.

Further, we find that the Homestead, Pennsylvania,

police department had enough information to have reasonable grounds to believe that defendant had committed a felony; that, therefore, they had probable cause to arrest him.

Even if the Homestead police department had not obtained a warrant, they could have arrested defendant without a warrant, because they had reasonable grounds to believe that a felony had been committed, and that defendant had committed it. 3 P. L. E., 34, Arrest, Section 4.

Defendant's third and fourth assignments of error contend that the trial court erred in overruling defendant's motion to suppress evidence and in admitting state's exhibit No. 1, the partially opened carton of Kool cigarettes, because such evidence was obtained by an illegal search and seizure.

At the June 16, 1967, hearing on the motion to suppress evidence, Captain Black testified that he went to see Judge Clyde Miller and swore out the affidavit for the search warrant.

Defendant points out that the space on the affidavit for search warrant for the facts and circumstances establishing the belief that the cigarettes are located at the dwelling of Edward Mattis was blank. The search warrant stated that the cigarettes belonged to Lawson Dairy Store, Hubbard, Ohio.

Pennsylvania's law on search warrants is of common law origin. 33 P. L. E., 156, Searches and Seizures, Section 3. Thus, Pennsylvania has no comparable statute such as Section 2933.23 of the Ohio Revised Code.

Sworn oral testimony before a magistrate can be used to demonstrate facts relied upon by a magistrate to support the finding of probable cause in issuing a search warrant in Pennsylvania. *Commonwealth* v. *Crawley*, 209 Pa. Sup. 70, 223 A. 2d 885; *United States, ex rel. Boyance,* v. *Myers,* 270 F. Supp. 734; *Sparks* v. *United States,* 90 F. Rep. 2d 61.

The question of probable cause upon which a search warrant may issue in Pennsylvania is determined by the judge or magistrate who issues the warrant. *Commonwealth* v. *Smyser,* 205 Pa. Sup. 599, 211 A. 2d 59.

There is a presumption in favor of the regularity of the issuance of a search warrant. *Rosanski* v. *State*, 106 Ohio St. 442; *Howe* v. *State*, 39 Ohio App. 58, petition in error dismissed, 124 Ohio St. 654; 48 Ohio Jurisprudence, Pt. 2, 2d 202, Search and Seizure, Section 13.

The affidavit for the search warrant reveals that it is sworn to by Chief James Armstrong and, on its face, is valid in this respect. Captain Black's testimony can be interpreted as giving sworn oral testimony as to the facts relied upon to support the finding of probable cause by the justice of the peace. We feel that either Chief Armstrong or Captain Black were aware of sufficient facts to support the finding of probable cause by the justice of the peace. Upon the basis of the evidence before us, we cannot hold that the search warrant was invalid.

Moreover, we have held that the arrest of defendant was legal under a valid warrant for his arrest, and that, even if no warrant had issued, the Homestead police department could have validly arrested defendant because they had reasonable grounds to believe that a felony had been committed. In the process of arresting defendant, the patrolmen observed the partially opened carton of Kool cigarettes at the Mattis residence. We hold that a police officer, lawfully in a house to arrest a particular person, may seize the evidence of a crime which he sees. *Cincinnati* v. *Mills*, 27 N. P. (N. S.), 473; 48 Ohio Jurisprudence, Pt. 2, 2d 196, Search and Seizure, Section 7.

We, therefore, overrule defendant's third and fourth assignments of error.

*Judgment affirmed.*

BROWN and STRAUB, JJ., concur.

LYNCH, J., of the Seventh Appellate District, and BROWN and STRAUB, JJ., of the Sixth Appellate District, sitting by designation in the Eleventh Appellate District.