OPINION
Defendant-appellant Adelbert Callahan appeals from his convictions which were entered in the Mahoning County Common Pleas Court. For the reasons set forth below, these convictions are affirmed.
 I. FACTS
In the early morning hours of April 30, 1996, a group of six young men decided to rob a bar called the Newport Inn in Youngstown, Ohio. The group of individuals included appellant, Willie Herring, Antwan Jones, Louis Allen, Eugene Foose and Kitwan Dalton. After driving a stolen van to a house to obtain firearms, the group drove to the bar and parked-near the establishment. Five of the men put on disguises such as masks and bandanas and entered the bar with guns drawn leaving Kitwan to man the van.
Appellant and Jones entered the bar through the front door of the bar. Upon their entrance, money was demanded from a security guard by the name of Herman Naze, Sr. When he stated that he had none, Naze was shot and killed, allegedly by appellant. The same gunman then shot and killed bar patron Dennis Kotheimer. Meanwhile, Herring, Foose and Allen went in through the back door. It appears that Herring, who was allegedly wearing a white mask, shot and killed bar patron Jimmie Lee Jones. He then shot bartender Deborah Aziz in the hip and shot bar owner Ronald Marinelli in the stomach. At Herring's request, Mr. Marinelli surrendered money from the cash register. Mr. Marinelli then attempted to shoot Herring with a gun from behind the bar but was too weak from being shot. Herring took the gun off of Marinelli and shot him twice in the legs.
After leaving the bar, the five robbers jumped into the waiting van and Dalton drove them from the scene. However, shortly thereafter a Youngstown Police Officer spotted the van and gave chase. Dalton crashed the van and the group fled on foot. Dalton and Jones were chased down and arrested immediately. Later that morning, Allen arrived at the police station and confessed to the robbery, naming all of the men in the group. Thereafter, Dalton confessed to his part in the plan. That evening appellant turned himself in and made a videotaped statement.
Appellant, who was seventeen years old at the time, was arraigned in the Mahoning County Common Pleas Court, Juvenile Division. He was later bound over to the General Division as an adult. On June 7, 1996, an indictment was filed charging appellant with seven counts: one count of complicity to aggravated murder; two counts of aggravated murder or in the alternative complicity to aggravated murder; two counts of complicity to attempted aggravated murder; and two counts of aggravated robbery. The indictment also contained mass murder and firearm specifications.
Appellant's trial commenced on October 15, 1997. Following the presentation of the state's case in chief, appellant rested without presenting any witnesses. Deliberations began October 20, 1997 during which time five jury questions were delivered to the court. The court sent the jury home and adjourned until the following morning. On October 21, appellant's attorney appeared and stated, "I waive the appearance of the defendant, Adelbert Callahan, for the purpose of answering jury questions." The court proceeded to read the following questions into the record:
 "Was Adelbert Callahan in the bar at the time Jimmie Lee Jones was killed[?]"
 "What did Mr. Marinelli testify the shooter of Herman Naze, Dennis Kotheimer was using as a disguise?"
 "What type of gun did Adelbert Callahan say that he had at the Newport Inn on the video? [referring to appellant's videotaped statement which jurors viewed during the trial]."
"Where is Shell Casing Number 8 on the diagram?"
 "What is [sic] the law say about being in the same robbery when someone other than yourself kills someone? Are you considered to be guilty of complicity because you were there helping to rob?"
In response to the first three questions, the court advised the jury that it had to rely upon its collective memory. As to the fourth question, the court stated that there., was no shell casing number eight. Regarding the final question, the trial court told the jury that the answer to such was contained in the jury instructions. Thereafter, jury deliberations continued until the court received another jury question which read, "I would like to know what type of gun Adelbert said Antwand [sic] Jones carried in the robbery on the video." The court responded that it could not recap the evidence for the jury and reiterated that the jury must use its collective memory. A juror then stated in open court, "We can't have the video or the transcript?" to which the court responded, "Correct" and stated that any further questions must be in writing.
Eventually the jury submitted a question which inquired, "If we are a hung jury on two counts, what do we do, and what happens to five counts we have agreed on?" Rather than answering the question, the trial court instructed the jury to return to the jury room and continue deliberations. Later, when appellant was in the courtroom with his attorney, the following two "questions" were submitted:
 "What did Adelbert Callahan say Antwand [sic] Jones had as a gun? We need an answer!"
"We are a hung jury. Unless we get an answer."
In response to these questions the trial court stated on the record outside the presence of the jury:
 "It has been discussed between counsel and the Court as to whether or not this Court has the ability to answer the specific question by way of a reference to the transcript or by showing the actual videotape of Adelbert Callahan to the jury. And from preliminary research it appears that it is discretionary with the Court and certainly should be given only if it can be accomplished fairly, completely and impartially.
 Having said that and based upon previous questions from this jury, the Court and counsel understand and believe that the jury has reached a verdict as to five of the seven counts, and that they have been deliberating as to two remaining counts. It has been suggested that at this point in time the jury will return to the courtroom with the five verdicts that they have reached and that, depending on those verdicts, if the verdicts are, in fact, guilty, then rather than declaring a mistrial or in lieu of declaring a mistrial, Mr. Callahan would be prepared to enter a plea of guilty to a charge of complicity to what we believe to be Counts Two and Three with the State dismissing the [mass murder] specifications as to those counts." (Tr. 306-307).
Appellant then indicated on the record that if the jury was hung on counts two and three, he would plead guilty to complicity to aggravated murder on said counts. Counts two and three pertained to the aggravated murder of Herman Naze, Sr. and Dennis Kotheimer and the jury had to decide whether appellant was guilty of aggravated murder with regards to these two victims, and if not, whether he was guilty of complicity to aggravated murder. Appellant's attorney advised him "should you decide that, no, I do not want to plead to those two, this jury would then continue deliberating with the possibility of seeing your videotape a second time." (Tr. 309).
Ultimately, the jury returned with five guilty verdicts: complicity to the aggravated murder of Jimmie Lee Jones; complicity to the attempted aggravated murder of Ronald Marinelli and Deborah Aziz; and complicity to the aggravated robbery of the Newport Inn and Ronald Marinelli. The jury was in fact hung on counts two and three. As planned, appellant then pled guilty to complicity to the aggravated murders of Herman Naze, Sr. and Dennis Kotheimer. Thereafter, appellant was found guilty of the seven counts as well as the seven attendant firearm specifications and was sentenced as follows: three life sentences with the chance of parole after twenty years on each term; four indefinite terms of ten to twenty-five years; and a three year definite term, all of said sentences to run consecutively with one another.
A timely notice of appeal was filed on November 5, 1997 from the trial court's sentencing entry. Appellant sets forth two assignments of error on appeal.
 II. ASSIGNMENT OF ERROR NUMBER ONE
Appellant's first assignment of error reads as follows:
 "THE TRIAL COURT VIOLATED CRIM.R. 43 AND ARTICLE 1 § 10 OHIO CONSTITUTION AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT BY ALLOWING DEFENSE COUNSEL TO WAIVE THE DEFENDANT'S PRESENCE DURING THE JURY QUESTIONS."
Under his first assignment of error, appellant contends that the trial court erred by permitting his attorney to waive his right to be present at the reading and answering of the jury questions. It is appellant's position that his presence at this stage of the proceedings would have materially contributed to his defense. Furthermore, he asserts that his rights could not be safeguarded merely by the presence of counsel. The end result of this absence is appellant's belief that his right to a fair trial was violated.
 A. APPLICABLE LAW
Appellant is correct in his assertion that a defendant has a fundamental right to be present at all critical stages of his trial. This right is set forth pursuant to Crim.R. 43 (A) which states in pertinent part as follows:
 "The defendant shall be present at the arraignment and every stage of the trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provide by these rules."
The Ohio and U.S. Constitutions provide similar provisions which guarantee a defendant's right to be present at critical stages of trial.
While a defendant does enjoy this right under certain circumstances, it is by no means absolute. State v. Meade (1997)80 Ohio St.3d 419, 421. Every instance in which a defendant is absent from the proceedings does not give rise to the reversal of an otherwise valid conviction. State v. White (1998), 82 Ohio St.3d 16,26 citing State v. Williams (1983), 6 Ohio St.3d 281,. 286. In order to warrant reversal, a defendant must illustrate that prejudice resulted due to the fact that he was not present. Prejudice under this type of circumstance can only be exhibited by a showing that a fair and just hearing was thwarted by defendant's absence. White, supra citing Snyder v. Massachusetts
(1934), 291 U.S. 97, 108. See, also, State v. Schiebel (1990),55 Ohio St.3d 71, 92. Similarly, a defendant must show that his absence bore a reasonably substantial relationship to his opportunity to defend. State v. Spivey (Feb. 11, 1998), Mahoning App. No. 89-CA-172, unreported at 7 citing State v. Williams
(1969), 19 Ohio App.2d 234, 241.
 B. ANALYSIS
A review of the case at bar fails to support a finding that appellant was denied a fair or just trial as a result of his absence when the initial jury questions were presented. First, the trial court judge did not interject any substantive matters into the proceedings when he addressed the jury's questions. As aforementioned, the trial court advised the jury members that they would have to rely upon their collective memory as related to any factual issues. Additionally, the court indicated that the answer to the jury question regarding the state of the law was in fact contained in the jury instructions provided by the court. The court provided similar answers to the questions later submitted by the jury. Such a failure to substantively alter or supplement the law or provide substantive guidance to the jury is indicative of a finding that appellant was not denied a fair and just trial.
Furthermore, counsel for defendant was present on every occasion that jury questions were discussed and waived his client's presence at said proceedings. The presence of counsel acted as a safeguard for appellant to ensure that a just and fair trial was preserved.
While appellant cites to Jones v. State (1875), 135 Ohio St. 87
for the proposition that the right to be present at jury questions and instructions cannot be waived by counsel, this holding has been modified by the Ohio Supreme Court. The court has stated that despite his absence, a new trial is not the proper remedy unless the defendant's right to a fair trial was prejudiced. State v. Abrams (1974), 39 Ohio St.2d 53, 56. This holding is consistent with the court's later holdings in Schiebel
and White, supra. Moreover, it has been held that a defendant who is absent during additional jury instructions is not prejudiced where his attorney is present to object. State v. Blackwell
(1984), 16 Ohio App.3d 100, cited favorably in State v. Clark
(1988), 38 Ohio St.3d 252, 258.
As to appellant's allegation that he was deprived of the opportunity to personally experience the difficulties that the jurors were having in their deliberations and such affected his decision to change his plea, this conclusion is not supported by the record. While appellant was not present for the initial jury questions, some of said questions had no relation to appellant's later plea. For instance, the jury's first question regarding the death of Jimmie Lee Jones would have no effect on appellant's plea in regards to the murders of Herman Naze, Sr. and Dennis Kotheimer. Similarly, the jury's question regarding shell casing number eight would not have provided appellant any insight as to the jury's difficulty in reaching verdicts on counts two and three.
Although the jury's other questions may have related to appellant's pleas, appellant was present at a later stage of the trial when a similar question was asked by the jury. The record does reflect that appellant was present when the jury indicated that it needed to know what type of gun Antwan Jones was using. The jury further explicitly stated that it would be a hung jury if it were not provided this information. These questions provided appellant with adequate notice of the jury's difficulties in reaching verdicts on the counts in question. Hence, his absence at the reading of the previous jury questions cannot be viewed as being prejudicial since appellant was present when the jury later reiterated its dilemma.
Based upon these circumstances, appellant had proper notice that the jury was having difficulty determining who was the responsible party for the murder of Herman Naze, Sr. and Dennis Kotheimer. Appellant's presence during the earlier proceedings would not have contributed to his defense beyond that which was gained from his presence when the final questions were posed by the jury. Moreover, there is no indication that appellant's trial was less fair as a result of his absence from the reading and answering of the initial jury questions. Absent such a finding, this court is not in the position to order a new trial. White,Schiebel and Adams, supra.
As Justice Cardozo stated in the majority opinion in Snyder,
supra:
 "There is danger that the criminal law will be brought into contempt — that discredit will even touch the great immunities assured by the Fourteenth Amendment — if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, * * *." Snyder at 122.
In keeping with this philosophy, this court cannot hold that the events in the case at bar sufficiently demonstrate the requisite prejudice to warrant a reversal. Accordingly, this assignment of error is overruled.
 III. ASSIGNMENT OF ERROR NUMBER TWO
Appellant' second assignment of error alleges:
 "THE DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1 § 10 OF THE CONSTITUTION OF THE STATE OF OHIO WAS VIOLATED BY DEFENSE COUNSEL'S ADVICE REGARDING THE JURY'S REVIEW OF A POLICE VIDEOTAPE THAT WAS NOT ADMITTED INTO EVIDENCE."
Appellant next argues that his counsel provided incompetent advice which resulted in the entering of a guilty plea to counts two and three. Due to the alleged deficiency of the attorney's performance, appellant asserts that his plea was not voluntarily and intelligently made. That portion of counsel's advice which is believed to be deficient relates to statements made regarding the jury's opportunity to review a police videotape that had been introduced at trial but not admitted into evidence. Counsel for appellant stated in relevant part as follows:
 "So that in the event that we do, in fact, we are making an agreement here on the record today that should you decide that, no, I do not want to plead to those two, this jury would then continue deliberating with the possibility of seeing your videotape a second time." (Tr. at 309).
Appellant is of the opinion that counsel's advice was incorrect as the tape in actuality could not have been reviewed by the jury since it was never formally admitted into evidence. Had appellant known that the videotape could not be reviewed by the jury, it is argued that he might not have been as willing to enter into a plea agreement.
 A. APPLICABLE LAW
In order to prevail on a claim of ineffective assistance of counsel, the defendant has the burden of proving two things: (1) that defense counsel's performance was deficient and (2) that said deficient performance prejudiced the defense. State v.Reynolds (1998), 80 Ohio St.3d 670, 674, citing Strickland v.Washington (1984), 466 U.S. 668, 687. The reviewing court looks at the totality of the evidence and decides if there exists a reasonable probability that, were it not for serious and unreasonable errors made, the outcome of the trial would have been different. Strickland, supra at 695-696. A reasonable probability is that which undermines one's confidence in the outcome of the trial. Id. See, also, State v. Bellish (Mar. 31, 1998), Mahoning App. No. 87-CA-78, unreported at 4.
As to the issue of the appropriateness of counsel's advice regarding the videotape statement, appellant relies upon R.C.2945.35 which provides:
 "Upon retiring for deliberation, the jury, at the discretion of the court, may take with it all papers except depositions, and all articles, photographs, and maps which have been offered in evidence. No article or paper identified but not admitted in evidence shall be taken by the jury upon its retirement."
Appellant agrees that a court has the discretion to replay a videotape exhibit during jury deliberations if the exhibit was properly admitted into evidence. State v. McGuire (1997), 80 Ohio St.3d 390,395; State v. Loza (1994), 71 Ohio St.3d 61, 79-80. However, appellant asserts the videotape that his attorney told him would be replayed was never formally admitted into evidence and as such could not have been reviewed. While such would initially appear to be the case pursuant to R.C. 2945.35, the Ohio Supreme Court took the opportunity to interpret the statute when it decided State v. Graven (1977), 52 Ohio St.2d 112, 113. In its decision, the court stated that "[t]he obvious purpose of the statute [R.C. 2945.35] is the exclusion from the jury room of that evidence which has been ruled inadmissible." (Emphasis added). The court reasoned that to read the statute literally would act to exclude such items as verdict forms, note paper, balloting paper, etc. which clearly should be permitted in the jury room. Id. Thus, the scope of the statute was essentially limited.
A similar approach has long been utilized on the federal level by the Sixth Circuit. In Blackmon v. United States (C.A. 6, 1973), 474 F.2d 1125 the court was faced with the situation where a map which had been marked for identification purposes but not received into evidence had been taken by the jury into the jury room. Despite the fact that it had never been admitted into evidence, the court held that no reversible error had occurred as there was no reason to believe that the admission of the evidence would have been refused if the appropriate request had been made.Id. at 1126. As such, no prejudice resulted. The same conclusion was reached by the Court in Henry v. United States (C.A. 6, 1953), 204 F.2d 817 when it stated as follows:
 "There is no iron-bound, copper-fastened, double riveted rule against the admission of evidence after both parties have rested upon their proof and even after the jury has entered upon its deliberations. Considerable latitude in discretion is vested in the trial judge in this respect." Id. at 820-821.
 B. ANALYSIS
In the case sub judice, during one police officer's testimony the jury was initially shown the fifteen minute videotaped statement which was marked as Exhibit 35. Later, when the time came to offer the exhibits for admission, the state declared, "at this time we would move for the admission of exhibits in this matter." (Tr. 229). Appellant's counsel asked, "Which numbers?" and the state replied, "All of them." Defense counsel then proceeded to go through the exhibits one at a time. When the court mentioned Exhibit 35, the state asserted, "Thirty-five is the tape which we are not asking to be admitted. It's just for identification purposes." (Tr. 240).
It is unknown why the state withdrew Exhibit 35, especially since it initially asked that all exhibits be admitted. Due to the state's withdrawal, Exhibit 35 was technically not "offered in evidence" or "properly admitted," even though the jury had already viewed the tape. As such, appellant insists that his attorney incorrectly informed him that the court could replay the videotape for the jury. However, in the case at bar the videotape was not excluded as constituting inadmissible evidence. In fact, before trial appellant filed a motion to suppress regarding the videotaped statement on the grounds that it was involuntarily given. After a suppression hearing, the court overruled the motion thereby ruling that the videotape was admissible and allowing the jury to watch the videotape at trial, decisions which appellant never appealed. Moreover, when counsel for appellant objected during trial as to the playing of the videotape the trial court again overruled the request.
Based upon this series of events, it cannot be held that the trial court was dealing with the type of inadmissable evidence contemplated in Graven, supra. On the contrary, the videotape had been formally deemed admissible and had already been shown to the jury on one occasion. This situation is more analogous to those presented in Blackmon and Henry, supra in which it was determined that error did not occur. There is no indication that had the state requested the admission of Exhibit 35 into evidence, such request would have been denied by the trial court. Hence, had appellant not agreed to enter pleas on counts two and three, the court would have been well within its discretion to permit the jury to review the videotape even though it was never admitted into evidence.
Since the court could have replayed the videotape for the jury, it cannot be held that counsel for appellant provided deficient advice in the case at bar. Appellant has failed to demonstrate the deficient performance element of the ineffective assistance of counsel test, and as such we need not progress to the prejudice element. See Strickland, supra. Appellant's second assignment of error is therefore overruled.
For the foregoing reasons, appellant's convictions are affirmed.
Donofrio, J., and Waite, J., concurs.
APPROVED:
 ___________________________ JOSEPH J. VUKOVICH, JUDGE