OPINION
{¶ 1} Appellant, Chad M. Brooks ("Brooks"), appeals the May 12, 2004 conviction for trafficking in counterfeit controlled substances in the Common Pleas Court of Seneca County.
 {¶ 2} On February 12, 2002, Brooks sold 11.99 grams of a substance represented as being crack cocaine to a confidential informant for $550.00. The sale took place at 106 ½ Coe Street in Tiffin, Ohio, which is within 1,000 feet of St. Joseph's Elementary School. The substance sold to the undercover informant was later tested and found not to contain a controlled substance.
 {¶ 3} On December 23, 2003, Brooks was indicted for trafficking in counterfeit controlled substances in violation of R.C. 2925.37(B), a felony of the fourth degree, with a specification that the offense was committed in the vicinity of a school. A motion in limine to limit questions and testimony to the pending charge only was filed by Brooks on May 4, 2004. The trial court granted Brooks' motion in limine. After a jury trial Brooks was found guilty of the charge with the specification. Brooks was sentenced to a prison term of thirteen months, to be served consecutively to an additional prison term in a separate case. It is from this judgment that Brooks now appeals asserting the following two assignments of error.
The verdict and sentence in this case should be vacated and the matterset for new trial due to the ineffective assistance of counsel. The trialcourt erred by denying the defense motion for mistrial for state'srepeated violations of the court's in limine order.
 {¶ 4} In the first assignment of error, Brooks argues that defense counsel's mini-opening statement to the jury was prejudicial to his case and constituted ineffective assistance of counsel. In Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court established the process for evaluating a claim of ineffective assistance of counsel. The court held that an appellant must first show that his counsel's performance was deficient. Id. at 687. An appellant demonstrates this by "showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, the appellant must show that his counsel's deficient performance prejudiced him. Id. This is proven by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 {¶ 5} The Ohio Supreme Court set forth the test as to whether an individual has been denied effective counsel in State v. Hester (1976),45 Ohio St.2d 71, 341 N.E.2d 304. In Hester, the court held that the test was "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." Id. at 79. The Ohio Supreme Court later revised this test in State v. Lytle (1976), 48 Ohio St.2d 391,396-397, 358 N.E.2d 623, vacated on other grounds in (1978), 438 U.S. 910,98 S.Ct. 3135, 57 L.Ed.2d 1154, stating:
When considering an allegation of ineffective assistance of counsel, atwo-step process is usually employed. First, there must be adetermination as to whether there has been a substantial violation of anyof defense counsel's essential duties to his client. Next, andanalytically separate from the question of whether the defendant's SixthAmendment rights were violated, there must be a determination as towhether the defense was prejudiced by counsel's ineffectiveness.
The court also placed the burden of proof upon the appellant, "since in Ohio a properly licensed attorney is presumably competent." Id., citingVaughn v. Maxwell (1965), 2 Ohio St.2d 299, 209 N.E.2d 164; State v.Williams (1969), 19 Ohio App.2d 234, 250 N.E.2d 907.
 {¶ 6} Specifically, Brooks argues that the mini-opening statement by defense counsel essentially told the jury that Brooks was guilty of the crime charged and shifted the burden to the defense to present a second story to lessen the impact of the charges. The following is the mini-opening statement made by defense counsel:
Everything that the prosecutor said is true. That's what [Brooks] ischarged with. And with every story that's told there's (sic) twostories.
 I look out and see some faces here. Oh my goodness! He's charged withselling drugs. The Judge just told you to keep an open mind. Everythingyou hear through first blush isn't necessarily the truth. Listen, keep anopen mind and remember as he's seated here he's innocent until some of youspeak on that. Thank you.
May 6, 2004 Transcript of Proceedings, p. 13.
 {¶ 7} Brooks interprets the statement by defense counsel that "[e]verything that the prosecutor said is true" to mean that defense counsel admitted Brooks' guilt of selling close to a half an ounce of crack cocaine to a confidential informant. However, after making the statement that what the prosecutor had said was true, defense counsel immediately stated "[t]hat's what he is charged with." When read in context of the entire mini-opening statement, defense counsel's remark that what the prosecutor said in his mini-opening statement was true was not an admission on counsel's part that Brooks was guilty of the charged offense. Defense counsel clearly proceeded to urge the jurors to consider that the prosecution's version of the events may not be the only explanation of the actions that took place on February 12, 2002.
 {¶ 8} Furthermore, defense counsel cross-examined the state's witnesses in a manner that suggests counsel was not conceding Brooks' guilt of the charged offense. Counsel attempted to cast doubt on the procedure used by law enforcement in utilizing the confidential informant to facilitate the controlled buy. Counsel questioned the confidential informant and Officers Clouse and Boyer regarding the CI's apartment and vehicle not being searched prior to or subsequent to the controlled buy. In addition, counsel pointed out that the officers could not see the confidential informant and Brooks during the alleged drug transaction. Counsel further questioned Officer Clouse as to why Brooks was not immediately arrested in order to recover the drug buy money in his possession. Counsel also asked questions of the confidential informant that suggested he had dropped off the drug buy money in his apartment and picked up the counterfeit drugs there.
 {¶ 9} Counsel also attacked the credibility of the confidential informant and provided possible motives for the informant to lie or fabricate the controlled buy. Counsel brought to the attention of the jury the confidential informant's criminal history, which included two convictions for trafficking in cocaine, a conviction for theft and six counts of forgery, a conviction for complicity for felonious assault, and a conviction of possession of cocaine and escape. In addition, the confidential informant's history as a drug dealer was discussed at length. Counsel also questioned the confidential informant regarding a tape that wasn't played for the jury in which the informant bragged to police officers about having had a few ounces of cocaine on his person that was not discovered during a previous encounter with police officers. Counsel also questioned the confidential informant about the agreement he had made with the prosecution regarding the possibility of pending charges being dropped pursuant to his cooperation in the controlled buys. Counsel attempted to cast doubt on the confidential informant's motive for testifying against Brooks. Counsel even proposed that the confidential informant never had a conversation with Brooks, rather he merely said the code words he was expected to say on the recording. Counsel also suggested that the confidential informant owed people money and used the buy money given to him by law enforcement to pay these people.
 {¶ 10} Therefore, based upon our review of the record, we cannot conclude that counsel was ineffective in his representation of Brooks or that Brooks was prejudiced in any way by his counsel's representation. Accordingly, we overrule Brooks' first assignment of error.
 {¶ 11} In the second assignment of error, Brooks argues that the trial court should have granted a mistrial based upon the prosecution's questioning of the confidential informant, Jeremy Parks, that violated the court's ruling on the motion in limine. Brooks asserts that the prosecution asked several questions of Parks that tainted the jury and prejudiced Brooks from receiving a fair trial.
 {¶ 12} In the motion in limine Brooks filed prior to his trial, he sought to prevent the prosecution from referring to or using information or evidence of any of his other acts, including his alleged prior arrests, police contact or convictions. The trial court's ruling on this motion in limine limited the prosecution to only presenting evidence and eliciting testimony regarding Brooks' actions on February 12, 2002. During the direct examination of Parks, the prosecution asked the following questions:
Q: Did you — you were you part of an operation for more than onceinvolving Chad Brooks?
 Mr. Hall: Objection.
 The Court: Sustained.
 Mr. Townsend: What other operations did you participate in involvingthe defendant?
 Mr. Hall: Objection.
 The Court: Sustained.
 Mr. Townsend: How many times would you typically buy from the suspect?
 A: Try to make it twice.
 Q: Was this the only event with Mr. Brooks?
 Mr. Hall: Objection.
 The Court: Counsel is chambers. * * *
May 6, 2004 Transcript of Proceedings, p. 113-114.
 {¶ 13} In chambers, the trial court attempted to determine why the prosecution was asking questions regarding the witness' other transactions with Brooks when the court had clearly made a ruling on the motion in limine that prohibited the prosecution from presenting evidence or eliciting testimony that related to acts other than those that occurred on February 12, 2002. Brooks' counsel moved for a mistrial which the trial court denied since defense counsel had promptly objected to the prosecution's questions and the trial court had timely sustained the objections. The prosecution asked to proffer the purported goal of asking the objected questions. The prosecution stated that it sought testimony from witness Parks that he had not conducted another deal ever with Brooks. After the following discussion, defense counsel agreed to allow the prosecution to inquire whether the witness was involved with Brooks:
The Court: Now, if he clearly words the question properly the Court mayallow it. If he says there was no other operations, if he asks strictly— I don't want — Why don't you say, were you involved with Chad Brooks?
 Mr. Townsend: I will.
 The Court: Is that met with your approval, Mr. Hall?
 Mr. Hall: Yes.
 The Court: And, the answer is gonna be, no?
 Mr. Townsend: That's correct.
May 6, 2004 Transcript of Proceedings, p. 117.
 {¶ 14} After returning to the courtroom, the prosecution asked one last
question of witness Parks:
Q: Mr. Parks, did you conduct any other operations with the defendant?
 A: No, I didn't.
May 6, 2004 Transcript of Proceedings, p. 119. Counsel did not object to this question by the prosecution although counsel did renew a motion for mistrial at the close of the prosecution's case-in-chief.
 {¶ 15} Brooks now argues that the final question asked by the prosecution did not mirror the question the parties agreed upon in chambers and that the question had the effect of eliciting irrelevant and prejudicial information from the witness. Therefore, Brooks asserts that the trial court should have granted defense counsel's motion for mistrial.
 {¶ 16} A mistrial is an extreme remedy, "declared only when the ends of justice so require and a fair trial is no longer possible." State v.Franklin (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, citing Illinoisv. Somerville (1973), 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425. We review a trial court's decision denying a motion for mistrial under an abuse of discretion standard. State v. Stanley (1997),121 Ohio App.3d 673, 699, 700 N.E.2d 881, citing State v. Sage
(1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343. Abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 17} In the case sub judice, no specific acts were elicited from witness Parks due to the trial court sustaining defense counsel's objections to the prosecution's questions. After an agreement was reached between the prosecution and defense counsel, the trial court allowed the prosecution to ask whether witness Parks had any involvement with Brooks other than the alleged transaction on February 12, 2002. It is within the trial court's discretion to determine whether a reference in testimony to subject matter forbidden in the court's ruling on a motion in limine merits the remedy of mistrial. State v. Reynolds (1988),49 Ohio App.3d 27, 33, 550 N.E.2d 490. Since the record does not reflect that any testimony relating to any drug transaction or operation other than the one conducted on February 12, 2002 was elicited during the trial, Brooks has failed to show how he was prejudiced by the prosecution's questioning.
 {¶ 18} Furthermore, in its final instructions to the jury, the trial court instructed, as follows:
You must not speculate as to why an objection was sustained to anyquestion or what the answer to such question might have been becausethese are questions of law and rests solely upon the Court. You mustnever assume or speculate on the truth of any suggestion or insinuationincluded in a question put to a witness by counsel, unless it wasconfirmed by the witnesses.
May 7, 2004 Transcript of Proceedings, p. 266. Thus, even if the questions asked by the prosecution regarding whether witness Parks had any other involvement with Brooks left an impression with the jury that was not cleared up by the final question asked by the prosecution on direct examination, the instruction by the court cured any error that could have resulted from the line of questioning. Therefore, no prejudice is apparent from the record and the trial court properly denied defense counsel's motion for mistrial. Accordingly, the second assignment of error is overruled.
 {¶ 19} Having found no merit with the assignments of error, the judgment of the Common Pleas Court of Seneca County is affirmed.
Judgment affirmed.
 Rogers and Shaw, JJ., concur.