STATE of Ohio, Appellant,

v.

TRUE, Appellee.

[Cite as *State v. True* (2000), 137 Ohio App.3d 348.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–990393, C–990394.

Decided March 31, 2000.

*Fay DuPuis,* City Solicitor, *Terrence R. Cosgrove,* City Prosecutor, and *Liza A. Kotlarsic,* Senior Assistant City Prosecutor, for appellant.

*Raymond T. Faller,* for appellee.

PAINTER, Judge.

The state appeals, pursuant to Crim.R. 12(J), from the trial court's order granting appellee Brian True's motion to suppress evidence pertaining to his R.C. 4511.19(A)(1) and (A)(3) charges. The trial court ruled that the officer who arrested True for driving under the influence of alcohol in violation of R.C. 4511.19(A)(1) lacked probable cause to do so. It accordingly suppressed statements made by True and the result of an intoxilyzer test. On appeal, the state raises one assignment of error: that the trial court erred as a matter of law in granting True's motion because there was probable cause for the arrest.

True was charged with violating R.C. 4511.19(A)(1) and R.C. 4511.19(A)(3), and with improperly changing the course of his vehicle in violation of Cincinnati Municipal Code 506–80. After his arrest, True was transported to a police station, where an intoxilyzer test demonstrated that he had a concentration of .104 grams of alcohol per two hundred ten liters of his breath, in violation of R.C. 4511.19(A)(3).

## The First Version

During the suppression hearing, the trial court heard only the testimony of the arresting police officer. On direct examination, she explained that she stopped True after she observed him move his car over three lanes of traffic to make a turn onto a cross street at approximately 12:30 a.m. She said that True failed both to use a turn signal and to operate his vehicle with reasonable safety. The officer turned on her lights and siren and pulled him over. After a short period of what the officer first described as "confusion," True pulled his car to a stop.

The officer walked to the car and noted that there was an odor of alcohol coming from True and that his eyes were "glazed over and watery." When she asked True if he had been drinking, he responded that he had had three to four drinks. The officer asked him for his driver's license, which he provided after "fumbling" for it. She next asked him to step from his car, which he did.

According to her direct examination, the officer conducted some field sobriety tests, although she had already determined that True was impaired. The officer testified that True paused through his recitation of the alphabet. She said that he did not touch his nose on "all" of the six finger-to-nose tests. As to the heel-to-toe test, the officer testified that True used his arms for balance. According to the officer, during the one-legged-stand test, True miscounted on several occasions, was unable to keep his foot up the whole time, and swayed. After the field sobriety tests, the officer placed True under arrest.

*But on Cross....*

On cross-examination, the officer testified that True had crossed over two lanes of moving traffic. She stated that his confusion before pulling over was because he did not know what she was asking him to do. She testified that when she walked to True's car, he was polite. Although she had testified on direct examination that he had fumbled while getting his license, she could not recall in what manner the fumbling occurred.

On cross-examination, she testified that True did not recite the alphabet out of order, omit any letters, backtrack or restart the alphabet at any time during his recitation. He did not have any problem keeping his balance. She refused, when asked by True's counsel, to say whether he had passed the alphabet test, because she was making her determination based on the collective result of all the tests.

When asked about True's performance on the finger-to-nose test, the officer testified that he did the test correctly on all but the first attempt. On that attempt, he touched under the tip of his nose. Again, she refused to classify that particular performance as passing or failing.

As to the one-legged-stand test, the officer testified on cross-examination that True swayed and used his arms for balance. She could not recall how many times he put his foot down. She testified that while counting during the test, he made one mistake when he referred to one thousand fifteen as one thousand five, but that he recited the next number correctly as one thousand sixteen. She testified that he did not hop while standing on one leg. She again did not respond when asked whether True had passed or failed the test.

In the last test, the officer instructed True to walk heel-to-toe. True had no balance problem while performing the test, he did not start the test too soon, he never stopped to steady himself, he touched his heel to his toe for each step, and he did not step off the line. Further, during this test, True turned correctly, walked the correct number of steps, and did not lose his balance while turning. The officer testified that the tests were performed in the rain. Her conclusion was that, collectively, he failed the tests.

On redirect examination, the officer testified that True's test performance confirmed her initial belief that True was "under the influence."

## The Trial Court's Decision

The trial court determined that the officer lacked probable cause to arrest True for driving under the influence, as follows:

"Here on the record I think it was clear that the Police Officer concluded before conducting the field sobriety tests that Defendant was driving under the influence of alcohol.

"If the field sobriety tests are to mean anything, a police officer must use the results of the field sobriety tests to validate the Defendant's impairment, if any.

"Here on the evidence and the law, on the totality of the circumstances, and the field sobriety tests results, I reach the inevitable conclusion that the Defendant's ability to operate a motor vehicle was not appreciably impaired.

"According to the law and the evidence, the Police Officer lacked probable cause to arrest for D.U.I. And the Court grants the motion to suppress."

The state argues that the comments of the trial court indicate that it incorrectly made a determination of True's innocence when it should have instead been focusing on whether the officer had probable cause to arrest True.

### We Defer to the Trial Court on Credibility

This court explained in *State v. Frank* [1] the significance of the findings of fact and conclusions of law resulting from a suppression hearing:

"First, this court must review the trial court's 'findings of historical fact only for clear error, giv[ing] due weight to inferences drawn from those facts' by the trial court. *Ornelas v. United States* (1996), 517 U.S. 690 [699], 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920. Accepting those facts as true, we must independently determine, as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard."

The test in this case is whether, at the moment of the arrest, the totality of the facts and circumstances known by the officer were sufficient to warrant a prudent person's belief that True was guilty of driving under the influence.[2] At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate witness credibility.[3]

There is no question about the propriety of the officer's initial stop of True based on his traffic violation. Further, the officer's observation of True's bloodshot eyes, his acknowledgment of having consumed alcohol, and the odor of alcohol supported the reasonable suspicion necessary for the officer to detain True to administer the field sobriety tests in order to investigate whether he was operating his car while under the influence of alcohol.

At issue is whether the trial court found credible the arresting officer's testimony as to what facts and circumstances were within her knowledge when

1. *State v. Frank* (Feb. 18, 2000), Hamilton App. No. C–990079, unreported, 2000 WL 192132.

2. See *Huber v. O'Neill* (1981), 66 Ohio St.2d 28, 30, 20 O.O.3d 17, 19, 419 N.E.2d 10, 12.

3. See *State v. Bankhead* (Feb. 25, 2000), Hamilton App. No. C–990139, unreported, 2000 WL 216630.

she arrested True. If the trial court believed the officer's report of what she observed, then arguably it should have concluded as a matter of law that there was probable cause to arrest True.[4]

The trial court revealed its suspicion of the arresting officer's credibility by stating that she had already made up her mind before she completed her investigation. The record supports that credibility determination of the trial court. The record reveals that although the officer initially offered her opinion of True's alleged impairment by using the ritualistic language concerning the odor of alcohol, glassy eyes, and the admission of alcohol consumption, defense counsel cast considerable doubt on her credibility during cross-examination. She refused to provide an opinion as to True's performance on the field sobriety tests individually, claiming instead that he had failed them collectively. The facts that she presented regarding that opinion, however, failed to support her conclusion.

Further, the officer initially reported that True was confused when she turned on her siren, but then clarified that negative impression with the explanation that he did not know what he wanted her to do. She testified about how his driving was so erratic that it almost caused an accident, but then failed to note that on her citation. She noted that he fumbled for his license, but could not provide a more adequate description. She also testified that he admitted that he had consumed three or four drinks, but did not explain how long he had been drinking. (The consumption of alcohol and its mere odor are not *per se* evidence of impairment.)

We must defer to the trial court in its assessment of the historical facts and the credibility of the witness. The issue of probable cause to arrest was totally dependent on the credibility of the officer's testimony, which was seriously undermined by the cross-examination. Therefore, we cannot conclude that the trial court erred in granting True's suppression motion. Thus, the state's assignment is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

DOAN, P.J., concurs.

SUNDERMANN, J., dissents.

SUNDERMANN, Judge, dissenting.

While there is no disagreement with the facts in this case, I disagree with the conclusions to be drawn from them as a matter of law. Brian True was charged

---

4. See *State v. Deters* (1998), 128 Ohio App.3d 329, 714 N.E.2d 972.

with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1), operating a motor vehicle with a prohibited alcohol concentration in violation of R.C. 4511.19(A)(3), and improper change of course in violation of Cincinnati Municipal Code 506–80. The record reveals that the arresting officer initially stopped True because he had cut across three lanes of traffic when making a turn. The officer stated that True appeared "confused" at the time of the initial stop, because he stopped and started his car before finally bringing it to a stop. The officer testified that True had an odor of alcohol on his breath, that his eyes appeared glazed, and that he fumbled for his wallet. When questioned by the officer, True admitted to consuming three to four drinks that evening. Based on these facts alone, I believe that there was probable cause to arrest True.

The officer then administered the field sobriety tests. According to the officer's testimony, True had performed reasonably well on the tests but he did make some mistakes. Based on the totality of the circumstances, the arresting officer believed that True was under the influence of alcohol and that his driving was impaired. True was then taken to a police station, where an intoxilyzer test was administered and he "blew" a .104, which is over the legal limit.

The record reflects that the trial court erred in sustaining True's motion to suppress. First, the trial court appears to have erroneously concluded that True's driving was not impaired and, as a result, that there was no probable cause to arrest based on the field sobriety tests alone. Specifically, the court stated the following:

"I think it was clear that the Police Officer concluded before conducting the field sobriety tests the Defendant was driving under the influence of alcohol.

"If the field sobriety tests are to mean anything, a police officer must use the results of the field sobriety tests to validate the Defendant's impairment, if any."

Second, the court appears to have determined True's guilt or innocence at the suppression hearing rather than whether there was probable cause to arrest.

This court has repeatedly held that watery eyes, the odor of alcohol, and the admission of recent consumption of alcohol constitute probable cause to arrest.[5]

---

5. See, e.g., *State v. Deters* (1998), 128 Ohio App.3d 329, 714 N.E.2d 972 (evidence of erratic operation of a watercraft, slurred speech, odor of alcohol, and admission of recent alcohol consumption provided probable cause to arrest); *State v. Lee* (Sept. 18, 1996), Hamilton App. No. C–960123, unreported, 1996 WL 526659 (evidence of erratic driving, odor of alcohol, slurred speech, and bloodshot eyes provided probable cause to arrest); *State v. McWilliams* (Mar. 1, 1995), Hamilton App. Nos. C–940378 and C–940379, unreported, 1995 WL 84084 (evidence of watery eyes, slurred speech, odor of alcohol, and recent consumption of alcohol constituted probable cause to arrest following an accident).

In *Cincinnati v. Kromski*,[6] we noted that recent amendments to R.C. 4511.19 *et seq.* had "created a low threshold for probable cause in cases involving warrantless arrests for DUI violations."[7] As a result, we held that erratic driving, the odor of alcohol, and the admission of recent consumption of alcohol constituted probable cause.[8] Further, in *State v. Tonne*,[9] we determined that red, watery eyes, the odor of alcohol, the presence of beer cans in the car, and swaying back and forth provided probable cause to arrest. By concluding that, as a matter of law, the erratic driving, glazed eyes, odor of alcohol, fumbling for a wallet, and admission of recent consumption of alcohol present in this case did not amount to probable cause, the trial court inappropriately called into doubt what constitutes probable cause in alcohol-related cases, particularly those involving charges under R.C. 4511.19(A)(3).[10] For these reasons, I respectfully dissent.

---

6. (1995), 102 Ohio App.3d 621, 657 N.E.2d 796.

7. *Id.* at 623, 657 N.E.2d at 797.

8. *Id.* at 623–624, 657 N.E.2d at 797–798.

9. (Sept. 24, 1999), Hamilton App. No. C980710, unreported, 1999 WL 741812, appeal not allowed (2000), 88 Ohio St.3d 1411, 723 N.E.2d 117.

10. See, *e.g.*, *State v. Ousley* (Sept. 20, 1999), Ross App. No. 99CA2476, unreported, 1999 WL 769961 (impaired coordination is not needed to establish probable cause to arrest for a violation of R.C. 4511.19[A][3] ); *State v. Downard* (Dec. 19, 1997), Washington App. No. 97 CA 24, unreported, 1997 WL 802867 (observation of usual impaired motor skills is not required to establish probable cause for a *per se* violation under R.C. 4511.19[A][3] ); *State v. Buckley* (Mar. 7, 1994), Warren App. No. CA93–09–076, unreported, 1994 WL 71242 (probable cause to arrest under R.C. 4511.19[A][3] requires only sufficient evidence of alcohol consumption and intoxication).