OPINION.
{¶ 1} Defendant-appellant Samuel Shisler was convicted of operating a motor vehicle under the influence, in violation of R.C. 4511.19(A)(1)(a). In two assignments of error, he now contests the trial court's denial of his motion to suppress the stop of his car and his breathalyzer test result. Shisler contends (1) that the trial court erred in finding that the police had probable cause or reasonable suspicion to stop him; and (2) that the trial court erred in finding that the state had substantially complied with regulations governing the testing of the breathalyzer machine he used. We affirm.
 {¶ 2} At Shisler's suppression hearing, police officer Kat Wasson testified that she had stopped Shisler after seeing him drive his car outside a marked lane. She stated, "I stopped him — my probable cause to stop was at McMicken and Elm to decide that I'd seen enough, that I needed to stop him. That was on McMicken and he — on northbound Elm to McMicken there is a solid white line. He was on the right side of the solid white line and when he turned left he crossed over the solid white line." Before stopping Shisler, Wasson had followed him for approximately five minutes and had videotaped some of Shisler's driving. Because of the angle of the police camera, the alleged traffic violation described by Wasson was not captured on tape. But the trial court indicated that it believed Wasson's testimony "100 percent."
 {¶ 3} After stopping Shisler, Wasson did not charge him with a marked-lanes violation, but instead cited him for weaving. She wrote on Shisler's ticket that the weaving violation had occurred at Ninth and Elm streets. The videotape of Shisler's driving did not reflect that Shisler had been weaving at that location. In Wasson's official investigative summary, she made no mention of Shisler's turn at McMicken and Elm.
 {¶ 4} Shisler was later transported to a police station, where he agreed to take a breathalyzer test. At the suppression hearing, Shisler challenged the admissibility of the test result on the ground that the state had failed to demonstrate compliance with Ohio Department of Health ("ODH") regulations governing the calibration of the breathalyzer machine. Specifically, Shisler argued that the solution used to check the accuracy of the breathalyzer was more than three months old. He also argued that the state could not establish that the check solution had been approved by the Ohio Director of Health, and he objected on Confrontation Clause grounds to the admission of a photocopied check-solution certificate stating that the check solution had been approved. The trial court overruled his objection and ultimately denied Shisler's motion to suppress.
 Standard of Review {¶ 5} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. In considering a motion to suppress, the trial court is in the best position to decide the facts and to evaluate the credibility of the witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972. Consequently, we must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583. With respect to the trial court's conclusions of law, however, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard. Burnside,
supra, at ¶ 8.
 The Stop {¶ 6} In his first assignment of error, Shisler asserts that the state failed to establish that Wasson had probable cause or reasonable suspicion to stop him. Shisler argues that the police videotape did not show the traffic violation alleged by Wasson. He also points out that Wasson's official report made no mention of any traffic violation at McMicken and Elm, and that the citation she issued to him charged him only with weaving at Ninth and Elm streets. In essence, Shisler contends that Wassons's testimony concerning his marked-lanes violation during his turn from Elm Street onto McMicken Street was not credible. But the trial court chose to believe the officer. Concededly, because of the camera angle, the videotape of Shisler's driving did not show the entire turn Shisler made from Elm Street onto McMicken Street, but it is well settled that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. See State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. We therefore defer to the trial court's finding that Wasson's testimony concerning her reason for stopping Shisler was credible.
 {¶ 7} Applying the applicable law to these facts, we find no error in the trial court's decision. A police officer's personal observation of a traffic violation provides probable cause to stop a motor vehicle. State v. Johnson, 1st Dist. Nos. C-010621 and C0-10622, 2002-Ohio-2884; see, also, Dayton v. Erickson,76 Ohio St.3d 3, 1996-Ohio-431, 665 N.E.2d 1091, syllabus. R.C.4511.33(A)(1) requires a vehicle to be driven "as nearly as is practicable entirely within a single lane of traffic" and that a vehicle can not be moved from its lane "until the driver has first ascertained that such movement can be made with safety." The facts known to Wasson at the time she made the stop, if believed by the trial court, were sufficient to establish probable cause to stop Shisler for a violation of R.C.4511.33(A)(1). For purposes of a probable-cause analysis, it is of no consequence that the officer did not ultimately charge Shisler with violating that statute. See State v. Moeller (Oct. 23, 2000), 12th Dist. No. CA99-07-128.
 {¶ 8} Since we have determined that Shisler's stop was supported by probable cause, we need not address the issue of reasonable suspicion. See Johnson, supra. The first assignment of error is overruled.
 The Breathalyzer Check {¶ 9} In his second assignment of error, Shisler contends that the trial court should have suppressed the result of his breathalyzer test. We disagree.
 {¶ 10} When a defendant challenges the result of a breathalyzer test, the result can be admitted into evidence only if the state can show that it substantially complied with the methods approved by ODH in the administration of the test.Defiance v. Kretz (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32;State v. Plummer (1986), 22 Ohio St.3d 292, 490 N.E.2d 902; see, also, R.C. 4511.19(D)(1). In this case, Shisler argues that the trial court erred by finding that the state had demonstrated that the breath-testing equipment at issue had been properly checked.
 {¶ 11} Breath-testing equipment must be calibrated, or "checked," at least every seven days for its range of accuracy. Ohio Adm. Code 3701-53-04(A). Shisler argues that the state failed to demonstrate substantial compliance with Ohio Adm. Code 3701-530-4(A)(2), which provides that the equipment "shall be checked using an instrument check solution containing ethyl alcohol approved by the director of health."
 {¶ 12} The breathalyzer used by Shisler was tested with an instrument check solution from a batch numbered 04090. At the suppression hearing, the state introduced into evidence a certificate signed by the director of health indicating that he had approved the check solution from that batch. In pertinent part, the certificate provided, "This instrument check solution contains 1.210 mg/mL ethyl alcohol in purified water. When used according to instrument check forms, it will produce a result at or within ±0.005 g/210/L of the target value in the approved breath testing instrument, when that instrument is in proper working condition." The director of health was not present and did not testify. But Officer Steve Edwards testified that he had maintained the records for the instrument check solution and that the certificate admitted into evidence was a true and accurate copy of the original one kept on file. Shisler contends that the certificate was "testimonial" as contemplated by the Supreme Court in Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354, and therefore should not have been admitted into evidence under the circumstances. We disagree.
 Crawford and the Check Solution Certificate {¶ 13} In Crawford, supra, at 68, 124 S.Ct. 1354, the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars admission of a declarant's prior "testimonial" statements unless the declarant is unavailable to testify, and unless the defendant has had a prior opportunity for cross-examination. The Court stated that the Confrontation Clause "applies to `witnesses' against the accused — in other words, those who `bear testimony.'" Id at 51, 124 S.Ct. 1354, citing 1 Webster, An American Dictionary of the English Language (1828). "Testimonial" statements include prior testimony at a preliminary hearing, before a grand jury, or at a former trial, as well as statements made during police interrogation. Crawford at 68,124 S.Ct. 1354. Recently, the Supreme Court held that 911 calls may be included in this category where the primary purpose of the 911 operator's questioning was to establish or prove events potentially relevant in a later prosecution. See Davis v.Washington (2006) ___ U.S. ___, 126 S.Ct. 2266. In State v. Nix,
1st Dist. No. C-030696, 2004-Ohio-5502, at ¶ 73, citingCrawford, supra, jurisdictional motion overruled,105 Ohio St.3d 1496, 2005-Ohio-1666, 825 N.E.2d 621, this court wrote that a "testimonial statement" has been broadly defined as being "the result of official examination." Indeed, the primary aim of the Confrontation Clause is to guard against the use of ex parte examinations as evidence against the accused. Crawford at 50,124 S.Ct. 1354.
 {¶ 14} Courts from a number of other jurisdictions have addressed this issue and have concluded that documents pertaining to the certification of a breath-test machine are not testimonial. We find these cases to be persuasive. In Ohio, the Sixth Appellate District has held that records relating to checks done on a breath-test machine are not testimonial because, unlike the types of statements considered "testimonial" in Crawford,
supra, certification records are not created in an investigatory or prosecutorial setting where a potential for abuse exists.State v. Cook, 6th Dist. No. WD-04-029, 2005-Ohio-1550, ¶ 19.[1] Other courts have held similarly. See, e.g., Peoplev. Lebrecht, (July 27, 2006), Sup.Ct.N.Y. No. 26347 (certificates relating to operation of a breath-testing device are not testimonial because, even though they are prepared for potential use in litigation, the certificates do not result from structured police questioning and are not created at official request to gather incriminating evidence against a particular individual); State v. Carter, 326 Mont. 427, 2005-MT-87,114 P.3d 1001 (intoxilyzer certification reports are nontestimonial because they do not fall within the core group of statements that the Confrontation Clause was meant to address, and because the reports are not substantive evidence of a crime); State v.Norman (2005), 203 Ore.App. 1, 125 P.3d 15 (documents pertaining to certification of a breath-test machine are nontestimonial because they are not the product of an ex parte examination and are not intended to be used to convict a particular defendant, and because the documents are not created in an investigatory or prosecutorial setting); Napier v. State, (Ind.App. 2005),827 N.E.2d 565, 569 (documents verifying that a breathalyzer is in working order are not testimonial because the evidence does not have a "bearing on the issue of guilt or innocence); but, see,People v. Orpin (2005), 796 N.Y.S.2d 512, 8 Misc.3d 768
(certifications are testimonial because they are prepared only for use in criminal cases, and technicians are most likely aware that certifications will be used in criminal prosecutions).
 {¶ 15} We hold that the certificate in this case was not testimonial as contemplated by Crawford. The statements in the certificate were not the product of an ex parte examination, which is the "primary evil" that Crawford cautions against. SeeCrawford, supra, at 50. And while a check-solution certificate is most certainly prepared in recognition of the fact that it may later be used in a criminal prosecution, the testing of the check solution here would have occurred even in the absence of charges against Shisler to ensure compliance with Ohio Adm. Code3701-53-04(A)(2). In other words, the director of health was not a "witness against the accused." The check solution certificate was not prepared for use specifically against Shisler. For these reasons, we hold that Shisler's rights under the Confrontation Clause were not violated when the court admitted the check solution certificate into evidence.[2] This argument has no merit.
 The Three-Month Time Limit {¶ 16} Next, Shisler argues that the state failed to demonstrate that it had substantially complied with Ohio Adm. Code3701-53-04(C). That code section provides that the instrument check solution "shall not be used more than three months after its date of first use * * *."
 {¶ 17} The breathalyzer Shisler used was checked on February 22, 2005, five days before Shisler took his breath test. Shisler contends that the solution at issue was first "used" on August 2, 2004 — the date that ODH approved the solution for use — and therefore that the state did not comply with ODH regulations. We disagree. The three-month time limitation set forth in Ohio Adm. Code 3701-53-04(C) begins running at the time the solution is first used in an instrument check. See Painter Looker, Ohio Driving Under The Influence Law (2006), Text 7.15 at 130, citingState v. Hall (1973), 39 Ohio App.2d 87, 315 N.E.2d 504; Statev. Senne (1978), 57 Ohio Misc. 1, 385 N.E.2d 333. Officer Edwards testified that the instrument check solution was first used in an instrument check on January 4, 2004 — seven weeks before Shisler's breathalyzer was checked. The court admitted into evidence an instrument check-form stating the same thing. Since the record contains competent, credible evidence that the state complied with the three-month time requirement of Ohio Adm. Code 3701-53-04(C), we find no error in the trial court's ruling. The second assignment of error is without merit.
 {¶ 18} Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
Sundermann and Hendon, JJ., concur.
[1] The Ohio Supreme Court has certified a conflict betweenCook, supra, and State v. Crager, 164 Ohio App.3d 816,2005-Ohio-6868, 844 N.E.2d 390, and has consolidated these cases for purposes of appeal. See State v. Crager,109 Ohio St.3d 1421, 2006-Ohio-1967, 846 N.E.2d 1532. In Crager, the Third Appellate District held that a report containing the results of DNA testing of a crime scene was "testimonial." We find Crager
to be factually distinguishable from this case and therefore inapplicable to the present issue.
[2] We find no error at all in the admission of the certificate. See State v. Edwards, 107 Ohio St.3d 169,2005-Ohio-6180, 837 N.E.2d 752, paragraph two of the syllabus (trial court may rely on hearsay to determine whether alcohol test results were obtained in compliance with methods approved by the director of health).