DECISION. *Page 2 
{¶ 1} Defendant-Appellant, Chase Wilson, appeals the judgment of the Hamilton County Municipal Court convicting him of operating a vehicle with a prohibited breath-alcohol concentration under R.C.4511.19(A)(1)(d).
 THE TRAFFIC STOP {¶ 2} Early one morning, at around 2:00 a.m., Cincinnati Police Officer Stephen Lawson was operating a laser speed-detection device on Interstate 74. He clocked Wilson's car travelling at 86 m.p.h. in a 55-m.p.h. zone. After Lawson had pulled onto the highway but before he activated his overhead lights, he saw Wilson's car veer almost completely onto the highway's right berm.
 {¶ 3} When Lawson spoke to Wilson, he detected a strong odor of alcohol about his person, and Wilson's eyes were bloodshot. Wilson stated that he had consumed one glass of wine.
 {¶ 4} Lawson asked Wilson to get out of his car, and he placed him in the back of his cruiser. After seven or eight minutes, Lawson administered a number of field-sobriety tests. Wilson was unable to recite the alphabet correctly, and Lawson determined that he had failed the walk-and-turn test, the one-leg-stand test, and the horizontal-gaze-nystagmus (HGN) test.
 {¶ 5} Lawson placed Wilson under arrest, and Wilson later submitted to a breathalyzer test. The test indicated that Wilson had .149 grams by weight of alcohol per 210 liters of his breath.
 {¶ 6} Wilson filed a motion to suppress the results of the breathalyzer test, arguing that Lawson had not possessed probable cause to arrest him and that the test *Page 3 
had not been administered in accordance with regulations promulgated by the Ohio Department of Health (ODH).
 {¶ 7} The trial court overruled Wilson's motion to suppress. Although the court suppressed the result of the HGN test, it held that Lawson had probable cause to make the arrest. The court further held that the breathalyzer test was valid. After the trial court had overruled the motion, Wilson entered a no-contest plea to a violation of R.C.4511.19(A)(1)(d).
 PROBABLE CAUSE TO ARREST {¶ 8} In his first assignment of error, Wilson argues that when Lawson placed him in the back of the cruiser and detained him for a period of seven to eight minutes, he had effectuated an arrest without probable cause.
 {¶ 9} When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to evaluate the credibility of witnesses and to weigh the evidence.[1] Although we must accept the trial court's findings of fact if they are supported by some competent, credible evidence, we conduct a de novo review of whether the facts meet the applicable legal standard.[2]
 {¶ 10} Here, we find no merit in Wilson's claim that his detention in the back of the cruiser constituted an arrest without probable cause. A brief detention during a valid traffic stop does not necessarily constitute an arrest, even if the motorist is detained in the back of a police cruiser.[3]
 {¶ 11} In this case, the detention was proper in light of the officer's reasonable suspicion that Wilson had been operating his car with a prohibited breath-alcohol *Page 4 
concentration. And the length of the challenged detention was no greater than would have been necessary had Lawson merely issued a citation for speeding. Accordingly, we overrule the first assignment of error.
 {¶ 12} In the second and third assignments of error, Wilson contends that the trial court erred in holding that Lawson had probable cause to arrest after he had administered the field-sobriety tests.
 {¶ 13} The test for probable cause is whether the facts and circumstances known by the officer were sufficient to warrant a prudent person's belief that Wilson was guilty of driving with a prohibited breath-alcohol concentration.[4]
 {¶ 14} We begin with the third assignment, in which Wilson argues that the trial court erred in holding that Lawson had substantially complied with the testing procedures for the walk-and-turn test and the one-leg-stand test.[5]
 {¶ 15} Wilson's sole argument under this assignment is that the tests were invalid under regulations promulgated by the National Highway Traffic Safety Administration because of his alleged physical impairment. He argues that he had undergone knee surgery and that his lingering disability prevented him from successfully performing the tests.
 {¶ 16} We find no merit in the assignment. The uncontroverted evidence at the suppression hearing was that Lawson had asked about a potential injury or disability before administering the field tests. But Wilson had not informed Lawson of any alleged disability until after he had performed poorly on the walk-and-turn test and the one-leg-stand test. *Page 5 
 {¶ 17} Under these circumstances, the trial court could have reasonably concluded that the claim of disability was spurious, and we find no error in the court's holding that the tests were valid. We overrule the third assignment of error.
 {¶ 18} In the second assignment of error, Wilson argues that the trial court erred in stating that, under State v. Homan,[6] there was probable cause to arrest even in the absence of the field-sobriety tests.
 {¶ 19} We find no reversible error. First, it is clear that the trial court's statement regarding Homan was not critical to its holding, given that the court in fact found the walk-and-turn test and the one-leg-stand test to have been valid.
 {¶ 20} Second, because we review de novo the trial court's legal conclusion with respect to probable cause, the court's statement aboutHoman was irrelevant. In light of Wilson's erratic driving, his demeanor, his admission that he had consumed alcohol, and his failure of the field-sobriety tests, we hold that Lawson had probable cause to make the arrest. We overrule the second assignment of error.
 COMPLIANCE WITH ODH REGULATIONS {¶ 21} In the fourth assignment of error, Wilson contends that the trial court erred in holding that the state had complied with ODH regulations governing the administering of the breathalyzer test.
 {¶ 22} When a defendant challenges the results of a breathalyzer test, the state must show that it had substantially complied with the methods approved by ODH for the administration of the test.[7]
 {¶ 23} Wilson first argues that the state failed to demonstrate that the breathalyzer machine had been calibrated when it had been placed in service, and *Page 6 
that it had been checked after being sent out for service or repair.[8] Wilson contends that his test was therefore not reliable under ODH regulations.
 {¶ 24} This argument is not persuasive. As the trial court correctly noted, the instrument check required under Ohio Adm. Code 3701-53-04(B) when the instrument is initially placed in service and when it is returned from repair is identical to the weekly test required under Ohio Adm. Code 3701-53-04(A). The language of Ohio Adm. Code 3701-53-04(B) itself indicates that compliance may be demonstrated upon a showing that the machine had been checked "before the instrument is used to test subjects." It is therefore apparent that the requirement regarding initial testing and testing after repair or service is to ensure calibration before the machine is used for evidentiary purposes.
 {¶ 25} In this case, the instrument had been in service for more than one year prior to Wilson's test. It had been checked numerous times before it was used to test Wilson, and there was evidence that the machine had not been sent out for repair or service. The state demonstrated that the machine had been tested immediately before and after the test that had been administered to Wilson, and that it was working properly at those times. In light of this evidence, the state amply demonstrated that Wilson's test was reliable.
 {¶ 26} Wilson next asserts that the solution used to test the breathalyzer had been initially used more than three months before the test in this case, in violation of Ohio Adm. Code 3701-53-04(C). This argument is without merit. Although the director of ODH had certified the batch more than three months before the Ohio Adm. Code 3701-53-04(B). *Page 7 
challenged calibration, the batch's intial use for testing was within the three-month period prescribed by the regulation.[9] We overrule the fourth assignment of error.
 ODH CERTIFICATE AND CRAWFORD {¶ 27} In his fifth and final assignment of error, Wilson argues that the trial court erred in admitting into evidence the ODH director's certification of the calibration solution. Specifically, he argues that the admission of the certificate in the absence of live testimony by the ODH director violated the Confrontation Clause of the Sixth Amendment to the United States Consitituion as interpreted in Crawford v.Washington.[10]
 {¶ 28} We recently rejected this argument, holding that the ODH director's certification was not "testimonial" within the meaning ofCrawford.[11] Although Wilson cites a contrary holding in a case from the Licking County Municipal Court,[12] we see no reason to revisit the issue. The fifth assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
 PAINTER, P. J, and HENDON, J., concur.
[1] State v. Sanders, 1st Dist. No. C-030846, 2004-Ohio-6842, at ¶ 6, citing State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, at ¶ 8.
[2] Id.
[3] See, e.g., State v. Polen, 1st Dist. Nos. C-050959 and C-050960,2006-Ohio-5599 (brief detention in the back of police cruiser did not necessitate Miranda warnings).
[4] See State v. True (2000), 137 Ohio App.3d 348, 351,738 N.E.2d 830, citing Huber v. O'Neill (1981), 66 Ohio St.2d 28, 30,419 N.E.2d 10.
[5] See R.C. 4511.19(D)(4).
[6] 89 Ohio St.3d 421, 2000-Ohio-212, 732 N.E.2d 952.
[7] State v. Shisler, 1st Dist. Nos. C-050860 and C-050861,2006-Ohio-5265, at ¶ 10.
[8] Ohio Adm. Code 3701-53-04(B).
[9] Ohio Adm. Code 3701-53-04(C). See, also, Shisler, supra, at ¶ 17 (date of initial use, not of certification, is the relevant date under Ohio Adm. Code 3701-53-04[C]).
[10] (2004), 541 U.S. 36, 124 S.Ct. 1354.
[11] Shisler, supra, at ¶ 15.
[12] Granville v. Graziano, 139 Ohio Misc.2d 29, 2006-Ohio-3551,858 N.E.2d 879. *Page 1