DECISION.
{¶ 1} On July 3, 2005, at approximately 1:oo a.m., Ohio State Trooper Thomas Middendorf used moving radar to clock defendant-appellant James Gangloff driving 58 m.p.h. in a 45-m.p.h. zone. Middendorf followed Gangloff, who was driving in the right-hand lane. Middendorf saw Gangloff weave from the right lane over the broken-white lane line into the left lane three times. Each time, Gangloff s left-side tires crossed the lane marker. Middendorf activated his lights and stopped Gangloff. When Middendorf activated his lights, his cruiser's mobile video recorder was also activated. Middendorf asked Gangloff to produce his license, registration, and proof of insurance. Gangloff produced his license without trouble, but he "fumbled" in trying to find his registration and proof of insurance. Middendorf smelled a "very strong odor of [an] alcoholic beverage," and he noticed that Gangloff had glassy, bloodshot eyes and slurred speech. In answer to a question from Middendorf, Gangloff stated that he had had one drink.
 {¶ 2} Middendorf asked Gangloff to exit from the car for the horizontal gaze nystagmus ("HGN") test. Middendorf tested both of Gangloff s eyes twice. Gangloff exhibited six of six clues of alcohol consumption. Gangloff refused to perform any other field sobriety tests and refused to submit to a portable breath test. Gangloff was transported to the police station, where he refused a breath test and a urine test. Gangloff told Middendorf that he had taken prescription Doxepin one to two hours before the stop and that his slurred speech was the result of "dry mouth" caused by the medication. *Page 3 
 {¶ 3} Gangloff was charged with speeding and operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a). Middendorf did not charge Gangloff with the lane violations, but he noted them in the remarks section of the traffic ticket. Gangloff filed a motion to suppress evidence, which the trial court overruled. After a bench trial, he was found guilty. Gangloff has appealed.
 {¶ 4} Gangloff s first assignment of error alleges that the trial court erred in holding the hearing on the motion to suppress in Gangloff s absence, without a valid waiver of his right to be present.
 {¶ 5} On the morning of the hearing on the motion to suppress, defense counsel reported to the trial court that Gangloff was ill, "vomiting and so forth." Gangloff s father had met counsel in the hallway of the courthouse to inform him that Gangloff was ill. Defense counsel noted that the trial court "had been very generous in granting continuances for both sides," and that Gangloff had been present "the other four times" that the case had been set. Counsel requested that the case be "set aside for a minute." The court then called other cases.
 {¶ 6} During the afternoon session, the court again called Gangloff s case. Defense counsel stated, "I have the authority to waive my client's appearance." Defense counsel noted the trial court's "desire to move forward * * * based upon the history of this case." Counsel further stated, "Your Honor, you gave us the option for him to recover and suck it up, as it were, and be here at 1:30 and proceed or I mentioned that I could waive his appearance." Defense counsel told the court that Gangloff s father had contacted Gangloff in the interim. Following that contact, Gangloff s father had made it clear that counsel had the authority to waive Gangloffs appearance. Defense counsel stated that he was "comfortable with that even though *Page 4 
I have not actually talked with my client. I'm comfortable going through his father." The court then conducted the hearing, which consisted of Middendorf's testimony. After Middendorf testified, the court indicated that it would continue the hearing if Gangloff wanted to testify, but defense counsel declined a continuance.
 {¶ 7} A hearing on a motion to suppress evidence where the testimony of a witness is received is a critical stage of the proceedings that requires the presence of the defendant.[1] Defense counsel can waive the defendant's right to be present at a suppression hearing when the witness who testifies at the hearing also testifies in substantially the same way at the trial in the defendant's presence, so that the defendant has the opportunity to challenge the evidence.[2]
 {¶ 8} Middendorf was the only witness to testify at the suppression hearing. He gave substantially the same testimony at trial, where Gangloff had the opportunity to assist his counsel in challenging the evidence. Further, Gangloff s father had contacted Gangloff and had received his permission for defense counsel to waive his appearance. At no time during the proceedings below did Gangloff raise any objection to the suppression hearing having been held in his absence. Under these circumstances, we hold that Gangloff s counsel could properly have waived his presence at the suppression hearing. The first assignment of error is overruled.
 {¶ 9} Gangloff s second assignment of error alleges that the trial court erred in denying his motion to suppress evidence. Gangloff argues that R.C. 4511.19(D)(4)(b), which provides that the results of field sobriety tests are admissible into evidence if the tests were administered in substantial compliance with the *Page 5 
National Highway Traffic Safety Administration ("NHTSA") guidelines, is unconstitutional. Further, Gangloff argues that even if the statute is constitutional, the results of an HGN test are not admissible absent strict compliance with testing procedures. The Ohio Supreme Court has rejected both arguments in State v. Boczar[3] In Boczar, the court upheld the constitutionality of R.C. 4511.19(D)(4)(b). The court also specifically stated that HGN test results are admissible into evidence when the test was administered in substantial compliance with NHTSA guidelines, and when the proper foundation is laid to demonstrate the officer's training and ability to administer the test and the actual technique used by the officer in administering the test.
 {¶ 10} Gangloff next argues that the state failed to establish that Middendorf had conducted the HGN test in compliance with the NHTSA guidelines. Gangloff s motion to suppress did not challenge the results of the HGN test on the basis that the test had not been administered in compliance with the guidelines. A motion to suppress evidence must state its legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided.[4] The burden of going forward with evidence shifts to the state only when the defendant has satisfied the initial burden of giving the prosecutor and the court sufficient notice of the issues to be determined at a hearing on a motion to suppress.[5]
 {¶ 11} Middendorf testified about the formal training he had received regarding the proper way to conduct field sobriety tests. His training certificate was admitted into evidence. Middendorf methodically explained how he had *Page 6 
administered the HGN test to Gangloff. Middendorf described the clues that he had been trained to observe and stated that he had observed those clues in testing Gangloff. We hold, given that Gangloff's motion to suppress did not specifically challenge the administration of the HGN test, that the state presented sufficient evidence that the HGN test was administered in substantial compliance with NHTSA guidelines and that the proper foundation was laid to demonstrate Middendorf s training and ability to administer the test and the actual technique used by Middendorf in administering the test to Gangloff. The trial court did not err in admitting the HGN test results.
 {¶ 12} Further, the totality of the facts and circumstances can support a finding of probable cause to arrest for driving under the influence of alcohol even in the absence or exclusion of field sobriety tests.[6] Middendorf observed Gangloff speeding and weaving. When he stopped Gangloff, Middendorf smelled a strong odor of an alcoholic beverage, and he noticed that Gangloff's had glassy, bloodshot eyes and slurred speech. Gangloff "fumbled" in trying to produce his registration and proof of insurance. Gangloff also stated that he had had "one drink." We hold that even if the HGN test results had been suppressed, the facts and circumstances known by Middendorf were sufficient to warrant a prudent person's belief that Gangloff had been driving under the influence of alcohol.[7] The second assignment of error is overruled. *Page 7 
 {¶ 13} Gangloffs third and fourth assignments of error allege that his conviction for driving under the influence of alcohol was based upon insufficient evidence and was against the manifest weight of the evidence.
 {¶ 14} In addition to the evidence previously set forth, Gangloff testified at trial that he had had three to four 12-ounce beers and a half shot of vodka between 7:30 p.m. and 1:00 a.m. Gangloff admitted that he had lied to Middendorf about the amount he had been drinking. Gangloff also presented an expert witness who testified that Doxepin could cause "dry mouth."
 {¶ 15} The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.[8] After viewing the evidence in the light most favorable to the prosecution, we hold that a rational trier of fact could have found that the state had proved all the essential elements of driving under the influence of alcohol beyond a reasonable doubt.[9] Further, after reviewing the entire record, weighing the evidence, and considering the credibility of the witnesses, we hold that the trier of fact did not lose its way and create a manifest miscarriage of justice.[10] The third and fourth assignments of error are overruled.
 {¶ 16} Gangloffs fifth assignment of error alleges that he was denied the effective assistance of counsel. Gangloff does not cite any specific instance of counsel's alleged ineffectiveness; he merely asks this court to "examine trial counsel's performance in light of Strickland v.Washington."[11] *Page 8 
 {¶ 17} Reversal of a conviction based upon the ineffective assistance of counsel requires a showing by the defendant that his counsel's performance was deficient and that he was prejudiced by the deficiency.[12] We have reviewed the record, and we hold that it does not demonstrate either deficient performance or prejudice to Gangloff. The fifth assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
HILDEBRANDT, P. J., and DINKELACKER, J., concur.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] See Mentor v. Caswell (1997), 123 Ohio App.3d 256, 704 N.E.2d 26;State v. Williams (1969), 19 Ohio App.2d 234, 250 N.E.2d 907.
[2] See State v. Williams, supra; State v. Berry (Oct. 21, 1993), 8th Dist. No. 60531; State v. Satterwhite (June 6, 1992), 2nd Dist. No. 13045.
[3] 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155.
[4] See State v. Shindler, 70 Ohio St.3d 54, 1994-Ohio-452,363 N.E.2d 319, syllabus; Norwood v. Kahn, 1st Dist. Nos. C-060497, C-060498, and C-060499, 2007-Ohio-2799.
[5] See Xenia v. Wallace (1988), 37 Ohio St.3d 216,524 N.E.2d 889.
[6] See State v. Homan, 89 Ohio St.3d 421, 2000-Ohio-212,732 N.E.2d 952.
[7] See State v. Wilson, 1st Dist. No. C-060363, 2007-Ohio-1174, citing State v. True (2000), 137 Ohio App.3d 348, 738 N.E.2d 830, andHuber v. O'Neill (1981), 66 Ohio St.2d 28, 419 N.E.2d 10.
[8] See State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212.
[9] See State v. Jenks (1991), 61 Ohio St.3d 259, 674 N.E.2d 492, paragraph two of the syllabus; State v. Murray, 156 Ohio St.3d 219, 2004-Ohio-654,805 N.E.2d 156.
[10] See State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541; State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717.
[11] (1984), 466 U.S. 668, 104 S.Ct. 2052.
[12] See id.; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. *Page 1