DECISION. *Page 3 
{¶ 1} Plaintiff-appellant, the state of Ohio, has appealed the trial court's granting of defendant-appellee Kevin Logeman's motion to suppress. For the following reasons, the judgment of the trial court is reversed.
 Factual Background {¶ 2} Cincinnati Police Officer Kenneth Kober stopped Logeman after clocking him with a laser as he traveled at 75 m.p.h. in a 45-m.p.h. zone. Officer Kober noticed an odor of alcohol and that Logeman's speech was slurred. Officer Kober administered several field sobriety tests to Logeman. Following the administration of these tests, Logeman was placed in custody, advised that he was under arrest, and was transported to a police station. At the station, Officer Kober administered a breath test on Logeman, using an Intoxilyzer 5000 machine. The test indicated that Logeman had a blood-alcohol content of .135 grams per 210 liters of his breath.
 {¶ 3} Logeman filed a motion to suppress, asserting that Officer Kober had lacked probable cause to arrest him and that the results of the field sobriety and breath tests should be suppressed. The breath test is the only issue relevant to this appeal. At the suppression hearing, the state presented testimony from Officer Kober and Officer Steven Fox, who handled maintenance on the Intoxilyzer 5000 machine. The trial court granted the motion and suppressed the results of the breath test.
 {¶ 4} The trial court apparently felt that the state had failed to comply with various Department of Health regulations, but it did not specify which regulations had been violated. When asked to elaborate on why it had suppressed the results of *Page 4 
the breath test, the trial court stated that "there was not substantial compliance with the NHTSA [regulations]. Refrigeration is certainly one issue that's involved * * * As to the effect of the electrical impulse, given that the machine was not plugged into a dedicated outlet circuit. I don't know what the effect is on that. The State did not address it. On the logs, there was no testimony as to when the machine was first purchased * * * that it performed properly, and in the subsequent times that it was recertified, retested, that it was operating functionally. There were no maintenance records that I recall that were introduced into evidence * * * But for that reason, also, and others, there are specific regs that must be followed by OAC, and I don't think there was substantial compliance with them."
 Standard of Review {¶ 5} Our review of the trial court's granting of a suppression motion presents a mixed question of fact and law.[1] We must accept the trial court's findings of fact if they are supported by competent, credible evidence.[2] But we conduct a de novo review to determine if the trial court properly applied the law.[3]
 Dedicated Outlet Circuit {¶ 6} In the first assignment of error, the state argues that the trial court erred in granting the motion to suppress on the grounds that Officer Fox had not known whether the Intoxilyzer 5000 machine had been plugged into a dedicated outlet circuit. The state is correct. *Page 5 
 {¶ 7} On cross-examination, Officer Fox had been asked whether the intoxilyzer machine had been operating on its own separately dedicated circuit. Officer Fox had not known the answer to this question.
 {¶ 8} Neither the Ohio Revised Code nor the Ohio Administrative Code contains regulations that require a breath-test machine to be plugged into its own separately dedicated circuit. And Logeman did not raise any issue concerning a dedicated circuit in his motion to suppress. The state had no notice that Logeman intended to raise this issue.
 {¶ 9} Because the Department of Health has not promulgated any regulations on this subject, the state was not required to prove that the Intoxilyzer 5000 machine had operated on a separately dedicated circuit. To the extent that the issue of a separately dedicated circuit might have been relevant, it was more applicable to an analysis of the weight of the evidence at a trial.
 {¶ 10} The trial court erred in granting Logeman's motion to suppress on these grounds. The first assignment of error is sustained.
 Refrigeration {¶ 11} In its second assignment of error, the state argues that the trial court erred in granting Logeman's motion to suppress on the grounds that Officer Fox had not known the exact degree of refrigeration in which the batch solution had been stored.
 {¶ 12} Before discussing this assignment of error, we note that Logeman's motion to suppress was similar to that discussed in our recent decision in Norwood v. Kahn.[4] The motion recited a litany of ways in which the state had potentially failed to comply with the administrative regulations. And Logeman had filed his *Page 6 
motion to suppress on the same day that he had filed his discovery request. Thus, he had not attempted to develop factual support for the issues in his motion.[5] Consequently, based on the reasoning adopted in Kahn, "the burden on the state to show substantial compliance with those regulations remain[ed] general and slight."[6]
 {¶ 13} During the suppression hearing, Officer Fox testified that the instrument check solution had been stored under refrigeration when not in use. The trial court then asked him at what degree of refrigeration the solution had been stored. Fox did not know the exact degree, but stated that the solution was "cold to the touch." Officer Fox further testified that, at the time that Logeman's breath test had been conducted, the temperature of the solution was 34 degrees Celsius.
 {¶ 14} Ohio Adm. Code 3701-53-04(C) provides that "[a]fter first use, instrument check solutions shall be kept under refrigeration when not being used." This regulation only requires that the solution be kept under refrigeration; it does not mention or require compliance with an exact degree of refrigeration. Consequently, we hold that the state may prove substantial compliance with this regulation by demonstrating that the solution has been kept under refrigeration. It need not prove the exact degree of refrigeration.
 {¶ 15} The Eleventh Appellate District has reached the same conclusion in State v. McCardel.[7] That court held that "[w]hile we agree with appellant that there was nothing in the record to indicate the exact temperature at which the calibration solution was stored, this is of no consequence. Ohio Adm. Code 3701-53-04 does not set forth a particular temperature range to store the solution. Rather, the regulation merely provides that the solution be kept refrigerated after first use."[8] *Page 7 
 {¶ 16} The trial court erred in granting Logeman's motion to suppress on the grounds that the state had failed to prove the exact degree of refrigeration. The second assignment of error is sustained.
 Ohio Adm. Code 3701-53-04(A) and (B) {¶ 17} In its third assignment of error, the state argues that the trial court erred in granting Logeman's motion to suppress on the grounds that the state had failed to prove that the Intoxilyzer 5000 machine had been working properly. Based on the trial court's comments at the suppression hearing, we presume that the court determined that the state had failed to prove substantial compliance with Ohio Adm. Code3701-53-04(A) and (B).
 {¶ 18} Ohio Adm. Code 3701-53-04(A) provides that "[a] senior operator shall perform an instrument check on approved evidential breath testing instruments and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with the appropriate instrument checklist for the instrument being used. The instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check." Subdivision (A)(1) concerns the RFI test, and it provides that "[t]he RFI detector check is valid when the evidential breath testing instrument detects RFI or aborts a subject test." Subdivision (A)(2) concerns the instrument check, and it provides that "[a]n instrument check result is valid when the result of the instrument check is at or within five one-thousandths (0.005) grams per two hundred ten liters of the target value for the instrument check solution."
 {¶ 19} Ohio Adm. Code 3701-53-04(B) provides that "[a]n instrument check shall be made in accordance with paragraph (A) of this rule when a new evidential *Page 8 
breath testing instrument is placed in service or when the instrument is returned after service or repairs, before the instrument is used to test subjects."
 {¶ 20} Officer Fox testified that, on September 5, 2006, he had conducted a weekly calibration check on the Intoxilyzer 5000 machine that had been used to test Logeman. The test had been administered to Logeman on September 11, 2006. Officer Fox explained the results of the test, which were in compliance with Ohio Adm. Code 3701-53-04(A)(2). According to Fox, the intoxilyzer machine was in proper working order and had not been taken out for repairs or service between the calibration check on September 5, 2006, and the administration of the test to Logeman. Officer Fox additionally testified that he had conducted a radio frequency interference check. The machine had detected RFI and had aborted the test.
 {¶ 21} Officer Fox's testimony clearly demonstrated substantial compliance with Ohio Adm. Code 3701-53-04(A). But Logeman argues that the state did not prove substantial compliance with Ohio Adm. Code3701-53-04(B) because Officer Fox did not testify that an instrument check had been performed after the Intoxilyzer 5000 machine had last been returned to service following a repair. We disagree.
 {¶ 22} This court has held that "the instrument check required under Ohio Adm. Code 3701-53-04(B) when the instrument is initially placed in service and when it is returned from repair is identical to the weekly test required under Ohio Adm. Code 3701-53-04(A). The language of Ohio Adm. Code 3701-53-04(B) itself indicates that compliance may be demonstrated upon a showing that the machine had been checked `before the instrument is used to test subjects.' It is therefore apparent that the requirement regarding initial testing and testing after repair or service is to ensure calibration before the machine is used for evidentiary purposes."[9] *Page 9 
 {¶ 23} As we have stated, Officer Fox testified that he had conducted an instrument check on September 5, 2006, six days before the test had been administered to Logeman. And he further testified that the intoxilyzer machine had not been taken out for service or repair between the instrument check and Logeman's breath test. Fox's testimony sufficiently established that the Intoxilyzer 5000 machine had been calibrated before being used for evidentiary purposes.
 {¶ 24} Accordingly, we conclude that the state demonstrated substantial compliance with Ohio Adm. Code 3701-53-04(A) and (B). The third assignment of error is sustained.
 Maintenance Records {¶ 25} In its fourth assignment of error, the state argues that the trial court erred in granting Logeman's motion to suppress on the grounds that the maintenance records for the Intoxilyzer 5000 machine had not been entered into evidence.
 {¶ 26} Ohio Adm. Code 3701-53-01(A) requires that "[t]he results of the tests shall be retained for not less than three years."
 {¶ 27} Officer Fox testified that he was responsible for maintenance on the Intoxilyzer 5000 machine. According to Officer Fox, maintenance records for this machine had been recorded in a log book and kept at the instrument test site. Fox further testified that maintenance records were kept for a minimum of three years.
 {¶ 28} We conclude that the Ohio Administrative Code did not require the introduction of the maintenance records into evidence. Officer Fox had personal knowledge of the maintenance conducted on the Intoxilyzer 5000 machine. He testified about the routine checks that he had conducted and about the storage of the *Page 10 
maintenance records. Officer Fox's testimony was sufficient to establish substantial compliance with Ohio Adm. Code 3701-53-01(A).
 {¶ 29} Accordingly, the fourth assignment of error is sustained.
 Conclusion {¶ 30} The state demonstrated substantial compliance with the Ohio Department of Health regulations. It was not required to prove that the Intoxilyzer 5000 machine had operated on a separately dedicated circuit. Nor was it required to demonstrate the exact degree of refrigeration at which the instrument check solution had been stored.
 {¶ 31} The trial court erred in granting Logeman's motion to suppress. Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this decision. Judgment reversed and cause remanded.
HILDEBRANDT, P.J., and SUNDERMANN, J., concur.
[1] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, ¶ 8.
[2] Id.
[3] Id.
[4] Norwood v. Kahn, 1st Dist. Nos. C-060497, C-060498, and C-060499, 2007-Ohio-2799.
[5] Id. at ¶ 9.
[6] Id. at ¶ 8, quoting State v. Ernbry, 12th Dist. No. CA2003-11-110, 2004-Ohio-6324, ¶ 29.
[7] State v. McCardel (Sept. 28, 2001), 11th Dist. No. 2000-P-0092.
[8] Id.
[9] State v. Wilson, 1st Dist. No. C-060363,2007-Ohio-1174, ¶ 24. *Page 1